Tom COOPER and his wife, Eloise P. Cooper, individually, and Tom Cooper and Eloise P. Cooper, co-partners, doing business as Tom Cooper Farms, Plaintiffs in Error,

v.

W. C. STEELE, Defendant in Error.

No. 36109.

Supreme Court of Oklahoma.

Sept. 28, 1954.

George & George, Ardmore, for plaintiffs in error.

Champion & Wallace, Wilson Wallace, Ardmore, for defendant in error.

ARNOLD, Justice.

W. C. Steele filed this action in the District Court of Carter County against Tom Cooper and his wife, Eloise P. Cooper, doing business under the name of Tom Cooper Farms, to recover one-fourth of the net profits of defendants' creamery earned during the first six months of 1951 allegedly due him under a written contract of employment, and for certain items of expense allegedly wrongfully charged against the profits which are not involved here.

Pertinent to the issues here raised, plaintiff's evidence tends to show that from 1942 until July, 1951, when he voluntarily resigned, he worked for defendants as manager and supervisor of the creamery and a

retail dairy store in Ardmore, under a written contract of employment whereby he received a stated monthly salary and one-fourth of the net profits earned by the creamery, and further provided:

"(6) This contract may be terminated at will by either party, with or without cause; and if so terminated by the Party of the First Part (the Coopers) at any time, an inventory of all assets of said creamery division, shall be made as soon as practicable, as herein outlined, and the Party of the Second Part (Steele) shall receive one-fourth of the net profits of said business from the date of the last accounting between the parties to the date of the termination of his employment hereunder; but in the event the Party of the Second Part (Steele) should terminate this contract at any time other than at the close of the calendar year, and of which termination at least 30 days written notice must have been given prior to the date of termination by Party of the Second Part (Steele) to Party of the First Part (the Coopers), then the Party of the Second Part (Steele) shall thereby lose and shall not be entitled to share in any of the profits earned by said business since the date of the last accounting of the profits of said business between the parties hereto."

That he hired a bookkeeper to keep the books of the business and that Mr. Cooper hired an accountant who checked the books every thirty days and made a report denominated an "Audit Report" showing the state of the business at the end of each month; that on each of these reports a "Manager's bonus" of one-fourth of the net profits for that month was set up, as well as the "accrued bonus" to that particular month; that he had not been paid any portion of the "bonus" so set up since December 31, 1950; that on July 1, 1951, he gave written notice to Cooper that he was terminating his employment as of August 1, 1951; that he worked until the last day of July, 1951; that he was not asking for any of the net profits earned during July but was asking for one-fourth of the profits earned from January 1 to June 30, 1951; he offered testimony, which was excluded by the court, that it was his understanding and intention at the time of the making of the contract that the "last acounting" mentioned in the contract was to be considered as the "last monthly accounting"; that he read the contract before he signed it; that sometime after the contract was signed his salary was raised by oral agreement, and sometime thereafter by oral agreement he was allowed to draw an extra $100 per month which was charged against his share of the profits, if any, at the end of the year; that in 1950 he drew down a part of his bonus prior to the final accounting at the end of the year; that one-fourth of the net profits of the creamery for the first six months of 1951, as shown by the monthly audit reports, was $4,785.48, which, after deducting the extra $100 which he had drawn against his share of the profits for each of the six months, left $4,185.48 due him as his share of the profits for that period.

Defendants' evidence reasonably tends to show that the monthly audit reports were merely operating statements which did not reflect the true net profit earned during that month because of the necessity of setting up estimated amounts for taxes and other items of expense which could not be accurately determined until the end of the year; that only at the end of the calendar year was a full accounting, inventory, and settlement made; that invariably at the end of the year it was found that the monthly estimates of net profit were incorrect and too high and adjustments had to be made; that the reason for the provision in the contract that if plaintiff quit at any time other than at the end of a calendar year was to prevent the cost and trouble of another inventory and accounting and to induce plaintiff to stay until the end of each year so that defendants would not be left without a manager during the busy season; that plaintiff was not paid his bonus until the yearly accounting and settlement was made.

The court, over the objections of defendants, instructed the jury that if it found that the "last acounting" referred to in the contract meant the "last monthly accounting or audit", then it should find for plaintiff, but if it found that the accounting referred

to meant only the annual accounting, that it should find for defendants. The jury returned a verdict in favor of plaintiff in the amount of $4,185.48 as manager bonus for the first six months of 1951, and judgment was entered in accordance with the verdict. From order overruling motion for new trial defendants appeal.

■ Defendants contend that plaintiff's right of recovery is fixed by paragraph 6 of the contract quoted above; that the terms of the contract are plain, explicit and contain no ambiguity; that instead of construing the contract, as it was the duty of the court to do, the court by its instructions left the construction of the contract to the jury, which was prejudicial error, and that the court should have directed the jury to return a verdict for defendants.

■■ The contract here in question is not ambiguous. It clearly provides that if defendants fired plaintiff, an immediate inventory should be taken and plaintiff would receive one-fourth of the net profits since the date of the last accounting. Had this happened plaintiff would undoubtedly contend that the last accounting meant the last time an inventory had been taken, all accounts settled, and his share of the profits actually paid him, which happened only at the end of the year. He certainly would not be content to receive just one-fourth of the previous month's profits. The provision which applies to him here, that in the event he quit voluntarily at any time other than at the end of the calendar year he would lose the one-fourth of the profits accrued since the date of the last accounting can only mean that he would not receive any of the profits accrued since the end of the last preceding calendar year, at which time inventory had been taken, all items of expense ascertained and balanced, and his share actually paid to him. Any other construction would render the whole paragraph meaningless. Any ambiguity which might exist as to the meaning of the words, "date of last accounting", is easily resolved by reference to the preceding sentences and the uncontroverted evidence as to when a final accounting was made and plaintiff's share actually paid him each year. Under the contract plaintiff was not entitled to recover any sum

as "manager bonus for the first six months of 1951" because he voluntarily quit prior to the end of the calendar year.

The court should have sustained defendants' motion for a directed verdict.

Reversed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON, WILLIAMS, and BLACKBIRD, JJ., concur.